**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DAVID DWIGHT MARTIN,** | ) | |
| | ) | **NO. 3:23-cv-01013** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **UNITED STATES OF AMERICA** | ) | |

**MEMORANDUM**

Pending before the Court is Petitioner David Dwight Martin's *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 1)[1] and the Government's response in opposition (Doc. No. 15). For the reasons set forth herein, Petitioner's *pro se* Motion (Doc. No. 1) will be **DENIED**, and this action **DISMISSED**.

## I. BACKGROUND[2]

In February 2020, Martin was charged in a two count superseding indictment alleging that he unlawfully possessed a firearm as a convicted felon on September 3, 2019, and December 4, 2019, in violation of 18 U.S.C. § 922(g)(1). (Superseding Indictment, CR Doc. No. 16). Martin entered a plea of not guilty to both charges. (CR Doc. No. 23).

On July 15, 2020, Martin, through his attorney Assistant Federal Public Defendant Sumter Camp, filed a motion to suppress "firearms found during traffic stops on December 3, 2019, and December 4, 2019." (CR Doc. No. 31). The Court held a suppression hearing on August 12, 2020

1 After filing the Petition, Petitioner realized that page 23 of the memorandum was inadvertently omittied. He filed that page separately. (Doc. No. 3).

2 Citations to the underlying criminal record, *United States v. Martin*, Case No. 3:19-cr-00311, are cited as "CR Doc. No. ____." Unless otherwise stated, all citations to "Doc. No. ___" are to the instant habeas case.

(*See* CR Doc. Nos. 40, 44), and ultimately denied the motion to suppress (CR Doc. No. 46). Sumter Camp then withdrew as defense counsel, and Luke Evans was appointed as Martin's new defense attorney. (CR Doc. Nos. 53, 54, 55).

The Court held a bench trial on May 18-19, 2021. (*See* CR Doc. Nos. 97, 101-103). The Court found Martin not guilty of Count One and guilty of Count Two. (CR Doc. No. 97). The Court denied Martin's post-trial motion for judgment of acquittal (CR Doc. No. 104), and imposed a sentence of 96 months imprisonment (CR Doc. No. 129). Martin appealed the denial of the judgment of acquittal. (CR Doc. No. 131 (Notice of Appeal)). He challenged the Court's determination that he knowingly possessed the gun. (*See United States v. Martin*, Case No. 22-152 (6th Cir.), *also filed at* CR Doc. No. 136). Martin did not appeal the Court's ruling on the motion to suppress. (*Id.*). The Sixth Circuit affirmed the Court's Order denying Martin's motion for judgment of acquittal. (*Id.*).

Martin seeks to vacate his conviction, arguing that his attorney's performance at the suppression hearing was constitutionally deficient and that but for the deficiency the motion to suppress would have been granted.

## II. LEGAL STANDARD

Petitioner brings this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence

to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). To obtain relief under Section 2255, a petitioner "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)); *see also*, *Wright v. Jones*, 182 F.3d 458, 463 (6th Cir. 1999).

A Section 2255 motion is not a substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). Consequently, as a general rule, any claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows "(1) 'cause' excusing [the] procedural default, and (2) 'actual prejudice' resulting from the errors," *United States v. Frady*, 456 U.S. 152, 168 (1982), or demonstrates that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). A claim of ineffective assistance of counsel is not subject to the procedural-default rule. *Massaro v. United States*, 538 U.S. 500 (2003). An ineffective-assistance claim may be raised in a collateral proceeding under Section 2255, regardless of whether the movant could have raised the claim on direct appeal. *Id.*

To prevail on an ineffective assistance of counsel claim, the burden is on the petitioner to show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) actual prejudice resulted from the deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 669; *Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In order to establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 669.

If a factual dispute arises in a Section 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray,* 721 F.3d at 761; *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999). Having reviewed the record in Petitioner's underlying criminal case, as well as the filings in this case, the Court finds it unnecessary to hold an evidentiary hearing because disposition of Petitioner's claims does not require the resolution of any factual dispute.

## III. ANALYSIS

Martin argues that his attorney provided constitutionally deficient representation with respect to the suppression of the firearm based on his failure to investigate the traffic stop and failure to impeach Detective Fikes at the suppression hearing.

The Court previously summarized Detective Fikes testimony at the suppression hearing as

follows:

> Detective Hunter Fikes of the Metropolitan Nashville Police Department testified that he was on patrol with the flex unit on December 4, 2019, at approximately 12:20 a.m., when he encountered the defendant in the Germantown area. (*Id.*, at 41, 43-44). Detective Fikes was patrolling with Officer William Erickson, who was riding in the passenger seat of the patrol car. (*Id.*, at 43-44). Detective Fikes observed a car pass him with its high beam lights on, and he turned around to follow the car to a red light, where both cars stopped. (*Id.*, at 45-46). Detective Fikes testified that there is a law requiring drivers to dim their headlights to oncoming traffic. (*Id.*, at 47). But he did not stop the car at that point. (*Id.*) While waiting for the red light to change, however, Detective Fikes noticed that the license tag of the car had expired in June 2019. (*Id.*) To confirm this observation, Detective Fikes asked Officer Erickson to run the tag on the computer. (*Id.*, at 48-49). Officer Erickson confirmed the expired tag. (*Id.*, at 51-52). Detective Fikes testified that there is a law prohibiting driving an unregistered vehicle. (*Id.*, at 49-51). At that point, Detective Fikes decided to stop the vehicle for the high beam violation and the expired tag violation. (*Id.*, at 52).
>
> After the traffic light turned green, Detective Fikes activated his blue lights and siren and stopped the vehicle, which he described as a blue BMW 325. (*Id.*, at 52-53). Detective Fikes approached the vehicle from the driver's side, and Officer Erickson approached from the passenger side. (*Id.*, at 53). As he approached, Detective Fikes observed a passenger in the back seat sitting directly behind the driver, who he later determined was the defendant. (*Id.*, at 53-54). Detective Fikes testified that there was also an individual in the passenger seat, in addition to the driver. (*Id.*, at 55). Detective Fikes stopped near the defendant's door to speak with him, while Officer Erickson spoke with the driver and front seat passenger. (*Id.*, at 55-56). Officer Erickson explained the reason for the stop, and requested the driver's license, registration, and proof of insurance. (*Id.*, at 55-56). Detective Fikes shined a flashlight in and knocked on the defendant's window. (*Id.*, at 57). After Defendant rolled the window down, Detective Fikes testified that he observed a clear plastic baggie, containing a green, leafy substance appearing to be marijuana, in the defendant's left pants pocket. (*Id.*, at 57-58). Detective Fikes then asked Defendant for identification, and the defendant complied. (*Id.*, at 58-59). Detective Fikes asked the defendant what was in the plastic bag, and said the defendant "hung his head" and told him, "it's weed man." (*Id.*, at 59). At this point,

> Officer Erickson was still at the passenger side window, and had not obtained the license, registration, and insurance information he had requested. (*Id.*) Detective Fikes asked the defendant to give him the plastic bag, and he complied. (*Id.*, at 60). Detective Fikes observed white pill-like bars in the baggie, as well as a crystal-like rock substance, and placed the baggie on top of the car. (*Id.*)
>
> Detective Fikes then asked the defendant to step out of the car, and as he did so, the detective observed a black handgun sitting on the floorboard where the defendant's feet had been. (*Id.*, at 60-62). Detective Fikes described the handgun as a Springfield Armory XDS .45 caliber. (*Id.*, at 61). Detective Fikes placed the handgun on top of the vehicle, then handcuffed the defendant. (*Id.*, at 62, 63). At this point, Detective Fikes testified, Officer Erickson had not run the driver's license check, had not verified the VIN number on the vehicle with the registration information, and had not checked the insurance information. (*Id.*, at 63-64). Detective Fikes testified that he decided not to issue a citation to the driver because she was having financial issues and had not had the money to renew her vehicle registration. (*Id.*, at 65). At some point during the traffic stop, Detective Fikes learned that the defendant was a convicted felon. (*Id.*, at 66).
>
> Detective Fikes ultimately charged the defendant with a narcotics offense, and unlawful possession of a firearm by a convicted felon. (*Id.*)
>
> On cross examination, Detective Fikes acknowledged that the incident report and the arrest report for the stop state the reason for the stop was expired tags, and do not mention high beams. (*Id.*, at 79).

(Order Denying Motion to Suppress, CR Doc. No. 46).

Martin contends his attorney should have investigated and raised the following issues: (1) that the traffic stop during which the firearm was discovered exceeded the scope necessary to investigate the reason for the stop because the officers did not need to talk to passengers; (2) although Fikes testified that he initially followed the car because it was using high beams, the incident report and arrest report did not mention high beams suggesting that the officers did not have reasonable suspicion or probable to stop the vehicle; and (3) Detective Fikes could not have

seen the plastic baggie of marijuana in Martin's pocket.

These allegations do not show constitutionally deficient representation by counsel. The evidence adduced during the hearing indicated that the officers stopped the vehicle because of expired license plate and a high beam violation. Detective Fikes failure to include the high beam violation in his written report does not undermine the basis for the stop based on the expired license plate. This issue was raised by counsel and addressed by the Court. (*See* CR Doc. No. 46 at 10 ("At the hearing, Defendant argued that the basis for the stop was not clear because Detective Fikes said he stopped the vehicle for failing to dim its high beam headlights when the incident and arrest reports state the reason for the stop was for expired tags. The Court is not persuaded there is a discrepancy in the evidence.").

Martin's next asserted instances of deficient representation – failure to investigate the stop and argue the scope was unreasonably prolonged – was also raised by counsel and addressed by the Court. (*Id*. at 10-11 ("Defendant alternatively argues that, even if the traffic stop was legal, the police wrongfully prolonged the seizure by taking a 'detour' to investigate the passenger, rather than immediately investigating and processing the traffic violation. … Defendant has not shown the officers discovered the contraband and firearm after they wrongfully prolonged the seizure.").

Martin's final argument, that his attorney failed to argue that Detective Fikes could not have seen the plastic baggie in his pocket while Martin was inside the car with the door closed. Fikes testified that the car window was rolled down and he looked into the car with a flashlight and saw the plastic bag was "half out of [Martin's] pocket, almost as if he tried … to take it out of his pocket … it wasn't completely out of the pocket but it was out of the pocket enough to where

[Fikes] could see a little bit of what was inside it." (Hearing Transcript, CR Doc. No. 44 at PageID# 169). Fikes asked Martin what was in the bag and Martin replied, "It's weed, man." (*Id*. at PageID# 170). The transcript reflects that Martin's attorney asked Fikes how and when he was able to see the plastic bag. It does not suggest deficient performance.

Martin fails to establish that his attorney rendered constitutionally deficient assistance of counsel at the suppression hearing or otherwise.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown deficient performance by his attorney at the suppression hearing or otherwise. Accordingly, Petitioner's Motion (Doc. No. 1) will be **DENIED**, and this action will be **DISMISSED**.

An Order will enter.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE